**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRC PARENT CORPORATION, et al. | ) | Case No. 10-11567 (MFW) |
| f/k/a CHEM RX CORPORATION, et al. | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| AP SERVICES, LLC, AS TRUSTEE OF | ) | |
| THE CRC LITIGATION TRUST | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 12-50701 (MFW) |
| | ) | |
| MCKESSON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of McKesson Corporation ("McKesson") for Summary Judgment on the Complaint filed by AP Services, LLC, as Trustee of the CRC Litigation Trust (the "Trustee"). The Complaint seeks to avoid transfers and recover property pursuant to sections 547, 548, 549, and 550 of the Bankruptcy Code and to disallow McKesson's claim pursuant to section 502(d). For the reasons set forth below, the Court will grant the Motion for Summary Judgment.

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I.   <u>BACKGROUND</u>

CRC Parent Corporation and its affiliates (collectively, the "Debtors") were pharmacies serving multiple correctional institutions and long-term care facilities, including skilled nursing homes and group homes.  The Debtors provided prescription and non-prescription drugs, intravenous medications, durable medical equipment, and surgical supplies for residents of institutions in New York, New Jersey, Pennsylvania, and Florida.

McKesson is a wholesale distributor of pharmaceutical products.  Beginning in 2004, McKesson sold pharmaceutical products to the Debtors through a computerized and highly automated process that tracked orders, payments, and shipments. From February 10 through May 11, 2010, the Debtors made sixty-four wire transfers to McKesson in an aggregate amount of not less than $9,874,843.53 (the "Transfers").

As a result of being highly leveraged and lacking adequate liquidity to sustain operations, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on May 11, 2010 (the "Petition Date").  On April 11, 2011, the Court entered an Order confirming the Debtors' Second Amended Joint Plan of Liquidation (the "Plan").  (D.I. 900.)[2]  Under the Plan, the Trustee is responsible for prosecuting causes of action for

---

[2]  Citations to pleadings in the bankruptcy case are "D.I. #" and to pleadings in the adversary proceeding are "Adv. D.I. #."

2

the benefit of creditors.   (D.I. 873.)

On May 8, 2012, the Trustee commenced the instant adversary proceeding by filing a Complaint against McKesson in which it alleges, inter alia, that the Transfers constituted preferential transfers pursuant to section 547 ("Count I"), fraudulent conveyances under section 548 ("Count II"), or unauthorized post-petition transfers under section 549 ("Count III"). Additionally, the Trustee seeks to recover the Transfers under section 550(a) ("Count IV") and to disallow McKesson's claims under section 502(d) ("Count V").

On February 14, 2013, McKesson filed its Motion for Summary Judgment on all counts in which it asserts that there are no triable issues of material fact.  In its Response, the Trustee conceded summary judgment regarding its Count II fraudulent conveyance claim.  Briefing has been completed on the other counts, and the matter is ripe for decision.


II.   <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this core proceeding.  28 U.S.C. § 1334(b) & § 157(b)(2)(F).


III. <u>DISCUSSION</u>

A.   <u>Standard of Review</u>

The court should grant a motion for summary judgment "if the

pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(c).[3]

In considering a motion for summary judgment under Rule 56,
the court must view the inferences from the record in the light
most favorable to the non-moving party. Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 255 (1986); Hollinger v. Magner Mining
Equip. Co., 667 F.2d 402, 405 (3d Cir. 1981). If there does not
appear to be a genuine issue as to any material fact and on such
facts the movant is entitled to judgment as a matter of law, the
court must enter judgment in the movant's favor. See, e.g.,
Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Carlson v.
Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990).

The movant bears the burden of establishing that no genuine
issue of material fact exits. See Matsushita Elec. Indus. Co.,
Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1985);
Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Grp.,
Inc.), 377 B.R. 471, 475 (Bankr. D. Del. 2007). A fact is
material when it could "affect the outcome of the suit."
Anderson, 477 U.S. at 248.

---

[3] Rule 7056 of the Federal Rules of Bankruptcy Procedure
incorporates Rule 56 of the Federal Rules of Civil Procedure in
adversary proceedings.

Once the moving party has established its prima facie case, the party opposing summary judgment must go beyond the pleadings and point to specific facts showing there is a genuine issue of fact for trial.  See, e.g., id. at 252; Matsushita, 475 U.S. at 585-86; Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000); Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 164 (3d Cir. 1999).  If the moving party offers only speculation and conclusory allegations in support of its motion, its burden of proof is not satisfied.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

B.    Preferential Transfer Claim

Section 547 allows the trustee or the debtor-in-possession to dismantle and avoid transactions between a debtor and its creditors that occurred within 90 days before the petition date. Barnhill v. Johnson, 503 U.S. 393, 394 (1992).  In order to avoid a pre-petition preferential transfer of a debtor's interest in property, the plaintiff must show that the transfer was:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
>     (A) on or within 90 days before the date of the filing of the petition; . . .
> (5) that enables such creditor to receive more than such creditor would receive if –
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payments of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

    "Unless each and every one of these elements is proven, a
transfer is not avoidable as a preference under 11 U.S.C. §
547(b)."  Argus Mgmt. Grp. v. J-Von N.A. (In re CVEO Corp.), 327
B.R. 724, 728 (Bankr. D. Del. 2005) (citations omitted).  See
also 11 U.S.C. § 547(g) (placing the burden of proof on the
trustee).

    McKesson argues in this case that the Trustee cannot satisfy
each of the prima facie elements required under section 547(b) to
establish that the alleged payments are avoidable preferences.
Specifically, McKesson asserts that the Transfers were not made
on account of an antecedent debt owed by the Debtors.

    Section 547(b)(2) requires that the transfer be "on account
of an antecedent debt" owed to the creditor.  11 U.S.C. §
547(b)(2).  "Although the term 'antecedent debt' is not defined
by the Bankruptcy Code, a debt is 'antecedent,' when the debtor
becomes legally bound to pay before the transfer is made."  The
Fonda Grp., Inc. v. Marcus Travel (In re The Fonda Grp., Inc.),
108 B.R. 956, 959 (Bankr. D. N.J. 1989) (internal citations
omitted).

    In support of its contention that the Transfers did not pay
an antecedent debt, McKesson attached an affidavit from Raymond
Carlisi, a McKesson Area Credit Manager (the "Carlisi
Affidavit").  (Adv. D.I. 23.)  Mr. Carlisi states that in 2009

6

the Debtors and McKesson instituted a daily ordering and payment process. (Id. at ¶ 8.) According to this process, the Debtors' pharmacies submitted orders electronically to McKesson's regional distribution centers which McKesson verified between 4:00 p.m. and 4:30 p.m. the same day. (Id.) McKesson would not deliver the goods ordered until the Debtors' payment for that day's purchases was made via wire transfer. (Id.)

In support, McKesson attached to the Carlisi Affidavit a copy of the McKesson accounting report which lists the order, billing and payment transactions during the preference period (the "Report"). (Adv. D.I. 23 at Ex. 1.) McKesson notes that the Report demonstrates which invoices were paid by which Transfers (all of the invoices paid by a particular wire transfer have the same Clearing Document Number as the payment).

McKesson argues that under its relationship with the Debtors, the wire transfer was always received before the delivery of the product. Therefore, it contends that none of the wire transfers paid an antecedent debt. See, e.g., Hechinger Inv. Co. of Del., Inc. v. Universal Forest Prods. (In re Hechinger Inv. Co. of Del., Inc.), 489 F.3d 568, 572 (3d Cir. 2007) (noting that payments made prior to the shipment of goods or provision of services "were advance payments and therefore, by definition, not recoverable under § 547 as payments for or on account of an antecedent debt").

7

The Trustee responds that in no instance on the Report does the clear date of a wire pre-date the delivery of the goods associated with corresponding invoices.  The Trustee argues that the column designated as "Clearing Date" demonstrates that the wires did not clear until the day <u>after</u> the delivery of the product.

McKesson responds that the "Clearing Date" column does not represent the date that the wire transfer was actually received as the Trustee suggests.  McKesson notes that the date the wire was received by McKesson is reflected in the column designated as "McKesson Invoice/Wire/Credit Number."  According to this column, the wire date was always identical to the date of the invoice and delivery.  McKesson contends that the "Clearing Date" is simply the date that McKesson's accounts receivable staff reviewed the transaction and credited the applicable payment on McKesson's internal accounting records, denoting the transaction as "cleared."

The Trustee also argues that the Report fails to indicate which invoices were paid by which Transfers.  The Trustee disputes McKesson's assertion that the wire transfers and invoices were linked under the "Clearing Document" column because the amount of the wire transfers did not always correspond to the amount of the invoices cleared by them.  The Trustee gives two examples where the wire transfer amount was less than the amount

of the goods delivered: on February 21, 2010, McKesson received a wire transfer of $209,771.97 for goods delivered in the amount of $214,052.73 and on February 16, 2010, McKesson received a wire transfer of $160,135.65, for goods delivered in the amount of $163,403.51.

McKesson responds that the Trustee added the wrong column to arrive at the total amount of goods shipped.  The Report includes a "Gross Invoice/Wire Amount" and a "Net Invoice/Payment Amount." McKesson notes that the sum of the column "Net Invoice/Payment Amount" always equaled the amount of the corresponding wire transfer.

Finally, the Trustee asserts that further discrepancies in the Report demonstrate that genuine issues of material fact remain as to the accuracy of the Report.  The Trustee provides two additional examples: the February 10, 2010, wire transfer of $195,000 exceeded the amount of invoices totaling $174,251.75, and the next wire transfer on February 11, 2010, of $22,643.49 was substantially less than the total invoices of $47,815.68.

McKesson again notes that when calculating the invoices under the net column, the total amount of invoices related to the $195,000 wire payment on February 10 actually equaled $170,767.12.  The $22,643.49 wire transfer on February 11 relates to total invoices of $46,876.37.  McKesson asserts that the Debtors overpaid McKesson by $24,232.88 with respect to the

9

February 10, 2010, wire payment, then underpaid McKesson by that same amount the next day.  McKesson argues that overpayments by the Debtors occurred occasionally and would be adjusted in the next payment.  During the preference period, however, McKesson notes that the Debtors never underpaid the invoices, unless there was a corresponding prior overpayment.  Therefore, McKesson argues no antecedent debt ever arose in that period.

The Court agrees with McKesson.  According to the Report and the Carlisi Affidavit, the daily ordering/prepayment relationship of the parties resulted in payment in advance for all deliveries.  The wire transfer always cleared before the delivery of McKesson's pharmaceutical product.  Therefore, the Transfers were advance payments and did not satisfy antecedent debt.  Thus, the Court will grant McKesson's Motion for Summary Judgment on Count I of the Complaint.

C.    Post-Petition Transfer Claim

The Trustee argues that genuine issues of material fact exist as to whether McKesson received post-petition transfers under section 549.  The Trustee asserts that the Debtors' last payment of $238,540.19 (the "Last Transfer") cleared McKesson's bank on the Petition Date.  The Trustee argues that McKesson has provided no evidence that the wire cleared prior to the Petition Date.

Relying on the Carlisi Affidavit, McKesson asserts that the

10

Report clearly evidences that the Last Transfer was made by the Debtors on May 10 not May 11, 2011.  (Adv. D.I. 23 at ¶ 12.) McKesson also notes that the receipt date of the Last Transfer is also corroborated by the May 2010 account statement of McKesson's affiliate, which shows that the $238,640.19 wire transfer was received on May 10, 2010, at 5:11 p.m. Eastern Time.  (Adv. D.I. 39 at Ex. 1.)

Based on the unrefuted evidence presented by McKesson, the Court finds that the Last Transfer cleared on May 10, 2010, the day before the Petition Date.  Therefore, the Last Transfer does not constitute a post-petition transfer avoidable pursuant to section 549.

D.   Other Claims

Because the Court grants summary judgment in favor of McKesson on the Trustee's avoidance claims, the related claims to recover the value of the Transfers under section 550(a) and to disallow McKesson's claim under section 502(d) also will be denied.  As a result, the Court will grant McKesson's Motion for Summary Judgment on all counts of the Trustee's Complaint.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant McKesson's Motion for Summary Judgment.

An appropriate Order is attached.


Dated:  May 16, 2013                    BY THE COURT:

                                        Mary F. Walrath
                                        United States Bankruptcy Judge